### The guardianship of ELIZABETH CALLAHAN.

A GUARDIAN being insolvent, his sureties will be prosecuted before entertaining a motion for his imprisonment on attachment.

RICHARD WINNE, *for Miss Callahan.*
C. MINOR *and* D. R. JAQUES, *for Guardian.*

THE SURROGATE. This is a motion for an order for an attachment against Alexander Frear, who was the guardian of Elizabeth Callahan during her minority. A decree was made by the Surrogate on the 18th October, 1860, that Frear "do forthwith pay the residue of said moneys to the said Elizabeth Callahan, said residue being

the sum of eight hundred and eleven dollars and twenty-one cents." He has not complied with the decree, and a balance remains due. A certificate of the decree has been docketed with the county clerk, and an execution issued against Frear for the balance due, which has been returned unsatisfied.

Mr. Frear resists this motion by an affidavit, which shows that, when appointed guardian, he was possessed of abundant means, but that he has since met with reverses and made an assignment, and that judgments, to a large amount, exist against him. He also sets up the defense that the sureties on his bond as guardian have not been prosecuted.

This is a good answer to the motion, which must be for the present denied.

In the matter of John W. Latson (1 *Duer's Reports*, *p.* 696), Judge Emmet held that a Surrogate's Court has no power to enforce, by an attachment against the person, an order for the payment of money, if the money can be collected on execution. This, however, was a case in which no certificate of the Surrogate's decree had been filed and no execution thereupon issued. But a stronger case is that in the estate of Devan (1 *Bradford's Reports*, 490), where such an execution had issued and been returned unsatisfied; and yet the Surrogate refused an attachment because it was not shown that the detention of the assets, by the party against whom the decree was made, was willful and intentional, he being poor, and actually unable to pay.

An attachment was also refused by Surrogate West in the matter of Thomas Cunningham's estate (not reported), although an execution which had been issued against the administrator on the filing of a certificate of the Surrogate's decree had been returned unsatisfied; the Surrogate directing that the bond should first be prosecuted.

I do not doubt the power of the Surrogate to proceed by attachment in his discretion, when other remedies shall

have been exhausted. The writ of attachment is a harsh means of compulsion, and is to be resorted to only in extreme cases. The guardian in this case has mixed up the trust funds of his ward with his own, and appears to have lost both; and the learned decision in *Seaman* v. *Duryea*, 1 *Kernan's Reports*, 324, satisfies me of my absolute power to punish him by attachment, other means failing. "The bond of a guardian," says Judge W. F. Allen, "is conditioned that he will in all things discharge the duty of a guardian to the minor according to law, and that he will render a true account of all moneys and property received by him, and of the application thereof and of his guardianship in all respects to any Court having cognizance thereof when required. (2 *R. S.*, 151, § 8.) And it would hardly be claimed that the refusal to pay over an ascertained balance would not be a breach of this condition."

Let there be an order directing an assignment of the bond for the purpose of prosecuting Frear and his sureties; and if this prove unavailing to recover Miss Callahan's money, I will then entertain the question of an attachment.